1
2
3
4
5
6          IN THE UNITED STATES DISTRICT COURT

7
8          FOR THE NORTHERN DISTRICT OF CALIFORNIA

9
10   AARON GBOTOE,

11           Petitioner,                                No. C 17-06819 WHA

12      v.

13   DAVID JENNINGS, *et al.*,                          **ORDER GRANTING
                                                        PROVISIONAL RELIEF**
14           Respondents.
15   _____/

16                                **INTRODUCTION**

17         In this habeas appeal from an immigration decision, petitioner seeks provisional relief.

18   To the extent stated below, his motion is **GRANTED**.

19                                 **STATEMENT**

20         Plaintiff Aaron Gbotoe is thirty-eight, a Liberian immigrant who came to the United

21   States as a refugee more than sixteen years ago. He is a member of the Mandingo ethnic group

22   and a practicing Muslim, groups that he argues have been and continue to be persecuted in

23   Liberia (Petn. ¶¶ 3, 13).

24         In 1989, according to his petition, members of Liberian rebel groups came to Gbotoe's

25   village, tortured him, raped his mother, and beheaded Gbotoe's uncle in front of him and his

26   family. After surviving this incident Gbotoe's family escaped Liberia to a refugee camp in

27   Ghana. Gbotoe lived in the refugee camp until he was about 21, at which time he and his

28   family were resettled in Oakland (*id.* ¶¶ 14–15).

           In 2009, approximately eight years after resettling in Oakland, Gbotoe was prosecuted

1   for and convicted of stealing a cell phone.  He was detained by ICE, and in November 2009 an

2   immigration judge denied his application for asylum and ordered him removed from the United

3   States.  The government, however, released Gbotoe from immigration custody and instructed

4   him to periodically report to ICE.  He thereafter returned to live in Oakland, where he met, and

5   eventually became engaged to his fiancee (*id.* ¶¶ 16–17).

6       In 2015, after a physical altercation with his fiancee's niece, Gbotoe was convicted of

7   assault.  After serving time in jail he was again transferred to ICE custody.  In April 2017, while

8   still in ICE custody, Gbotoe obtained *pro bono* representation from Attorney Jehan Laner.  In

9   June 2017, ICE attempted to deport Gbotoe, but Gbotoe's attorney filed a four-page emergency

10  motion to reopen his asylum and withholding of removal case based upon changed conditions in

11  Liberia, which have allegedly made it more dangerous for Mandingo Muslims like Gbotoe.  In

12  that same brief, he also moved for a stay of removal while the motion to reopen was pending,

13  and moved for leave to supplement the motion to reopen with additional evidence (Dkt. Nos.  4

14  ¶ 5; 4-1 at 2–6).

15      The immigration judge granted Gbotoe's motion for a stay and his motion to supplement

16  the motion to reopen.  In September, Gbotoe's attorney filed an amended motion to reopen with

17  substantial additional evidence related to increased danger due to changed conditions in Liberia

18  (*id.* ¶¶ 19–22; Dkt. Nos.  4 ¶ 5; 4-1 at 75–83).

19      The amended motion to reopen filed by Attorney Laner, however, was simply titled

20  "Respondent's Motion to Reopen Based on Withholding of Removal and Relief Under the

21  Convention Against Torture And Changed Circumstances."  While the procedural history set

22  forth in the amended motion explains that it was, in fact, a "supplemental brief and supporting

23  documents," as previously allowed by the immigration judge, this was not otherwise apparent

24  (Dkt. No. 4-1 at 58).

25      Three days after Gbotoe filed his amended motion to reopen, the immigration judge

26  issued an order denying his motion.  That order, however, referred only to Gbotoe's original

27  motion to reopen and the exhibits appended thereto, not the amended motion to reopen.  In his

28  denial, the immigration judge stated that Gbotoe "ha[d] not alleged that there is new evidence

which was unavailable at the prior proceedings" and further found that Gbotoe had submitted "supporting documentation which establishes that nothing ha[d] changed in Liberia" (Dkt. No. 4-2 at 15–16).

A little more than a month after rendering his first decision, the immigration judge issued a second order denying what the judgment referred to as Gbotoe's "2nd Motion to Reopen." He denied the motion on the grounds that he did not have jurisdiction to hear a second motion (*id.* at 19, 21). Based on the record, it appears that the immigration judge construed the amended petition and supporting evidence (which he granted Gbotoe leave to file) as a *second, successive* petition to reopen, and, on that basis, declined to review it (Dkt. No. 15 at 2–3, n. 1; *see* Dkt. No. 4-2 at 21).

Gbotoe appealed the immigration judge's decision to the BIA, and requested the BIA stay his deportation while the appeal was pending. On November 27, without ruling on his motion to reopen, the BIA denied Gbotoe's motion for a stay. The order stated in full (*id.* ¶¶ 23–26; Dkt. No. 4-2 at 89):

> Counsel for the respondent has applied for a stay of removal pending consideration by the Board of Immigration Appeals of an appeal of the Immigration Judge's denial of a motion to reopen. After consideration of all information, there is little likelihood that the appeal will be sustained. Accordingly, the request for a stay of removal is denied.

On November 28, the day after his stay was denied, ICE informed Gbotoe that he would be deported to Liberia that evening. That same day, Gbotoe filed a habeas petition and motion for a temporary restraining order. The Court stayed the removal to allow time for briefing.

Gbotoe's TRO motion seeks an order enjoining his deportation pending a decision on his habeas petition. His habeas petition, in turn, seeks an injunction against DHS prohibiting Gbotoe's removal prior to the adjudication of his motion to reopen by the BIA.

Gbotoe's habeas petition raises three claims contending that his removal from the United States before he has had an opportunity to fully adjudicate his motion to reopen violates: (1) the Immigration and Nationality Act ("INA"), (2) the Convention Against Torture ("CAT") and Article 33.1 of the United Nations Convention Relating to The Status of Refugees, and (3) procedural due process. In his TRO, Gbotoe contends that he is likely to succeed on each of

3

1   these claims.  He further contends that the equities tip heavily in his favor, and that it is in the

2   public interest to uphold his statutory and constitutional rights (TRO at 3–5).

3        Respondents argue that this Court does not have subject-matter jurisdiction to hear

4   Gbotoe's claims, and should therefore deny his motion and dismiss his habeas petition on this

5   basis alone.  Even if there is jurisdiction, they contend that Gbotoe has failed to make the

6   necessary showing for provisional relief (Dkt. No. 9).

### ANALYSIS

**1.    SUBJECT-MATTER JURISDICTION.**

Pursuant to the REAL ID Act of 2005, district courts do not have habeas jurisdiction to

review final orders of removal.  Rather, this power is vested exclusively in the circuit courts (8

U.S.C. 1252(a)(5)):

> Notwithstanding any other provision of law (statutory or
> nonstatutory), including section 2241 of Title 28, or any other
> habeas corpus provision, and sections 1361 and 1651 of such title,
> a petition for review filed with an appropriate court of appeals in
> accordance with this section shall be the sole and exclusive means
> for judicial review of an order of removal entered or issued under
> any provision of this chapter.

The REAL ID Act was intended to limit the avenues of review while still preserving an

alien's right to have his claims heard by an Article III judge. *Singh v. Gonzales*, 499 F.3d 969,

977 (9th Cir. 2007).   By vesting jurisdiction solely with the circuit courts, the Act allays

concerns that aliens will be deprived of review by an Article III court, but discourages

unnecessary delay in the removal process. *Id.* at 976, 978 (citing H.R. Rep. No 109-72, at 175,

2005 U.S.C.C.A.N. 240, 299).

This jurisdiction-stripping provision, however, applies only to the review of an order of

removal.  It does "not preclude habeas review over challenges to detention that are *independent*

*of challenges to removal orders*." *Id.* at 978 (quoting H.R. Rep. No. 109–72, at 175, 2005

U.S.C.C.A.N. 240, 299).  Thus, the critical question in determining whether an alien can bring a

claim in the district court is whether his challenge arises from an order of removal, or is instead

independent of or collateral to a challenge to the removal order.

Our court of appeals addressed this important distinction in *Singh.*  There, an alien facing

4

removal brought a habeas petition in the district court claiming ineffective assistance of counsel based upon his attorney's failure to timely appeal a decision of the BIA, thereby waiving the appeal. Our court of appeals held that the district court had subject-matter jurisdiction to hear the IAC claim because it did not seek review of a final order of removal, but instead asked the court to review a collateral issue — whether the petitioner should be restored the right of appeal he lost as a result of his attorney's ineffectiveness. *Singh* observed that the petition addressed a claim that arose *after* his final order of removal had been entered, and that if the petitioner prevailed, his only remedy "would be the restarting of the thirty-day period for the filing of a petition for review" with the court of appeals. "In other words, a successful habeas petition . . . [would] lead to nothing more than a day in court" for the petitioner. *Id.* at 979.

Gbotoe urges that his case is similar to *Singh* and likewise merits review in the district court. As in *Singh*, he argues that his only avenue for relief is through a habeas appeal. Significantly, he cannot appeal the BIA's denial of stay directly to our court of appeals, *Shaboyan v. Holder*, 652 F.3d 988, 991 (9th Cir. 2011), and the BIA has not yet issued a final merits determination on his motion to reopen. Moreover, as in *Singh*, Gbotoe does not seek review of a final order of removal, but instead asks for review of the BIA's denial of his motion to stay — a claim he contends is collateral to his removal order, and therefore falls outside the jurisdiction-stripping provision of the REAL ID Act (Dkt. No. 12 at 10–11).

For their party, respondents rely heavily upon this Court's earlier decision in *Arce v. Holder*, No. C 12-04063 WHA, 2012 WL 3276994, at \*2 (N.D. Cal. Aug. 9, 2012), in attempting to distinguish Gbotoe's case from *Singh*. At first blush, *Arce* presents a highly similar case. The petitioner, like Gbotoe, requested the district court stay his removal pending a final determination from the BIA on his application to reopen an asylum claim. *Id.* at \*1. There, as here, the petitioner alleged that his removal prior to a final merits determination on his motion to reopen would violate the INA and CAT. In *Arce*, the undersigned found that jurisdiction-stripping provision of the REAL ID Act precluded review in the district court, and thus dismissed the case.

Though he admits the similarities between *Arce* and the present action, Gbotoe seizes on

5

1    a distinction, which he argues saves jurisdiction in this case (Dkt. No. 12 at 10).  In *Arce*, the

2    petitioner had not previously sought a stay from the BIA.  Thus, the petitioner was not asking

3    that the district court review the BIA's denial of a stay, but rather seeking a stay in the first

4    instance.  *Arce*, 2012 WL 3276994, at *1.

5         Gbotoe contends that in light of that distinction his motion raises concerns not present in

6    *Arce*.  *If this Court declines to exercise jurisdiction to review his stay, Gbotoe will have no forum*

7    *to seek review of the agency's decision prior to his removal.*.  Indeed, our court of appeals

8    confirmed as much in *Shaboyan*, 652 F.3d at 990.  There, our court of appeals found that it did

9    not have jurisdiction to review the BIA's interim order denying a stay of removal because a stay

10   "cannot qualify as a final order of removal," is not "inextricably linked" to a removal order, and

11   does not "attack the validity of the underlying removal order."  *Ibid.* (citations and quotations

12   omitted).  If this Court likewise declined review — on the grounds that such review amounted to

13   a review of a final removal order — the BIA's stay order would become effectively

14   unreviewable.  Not only would this be inequitable, it would seem contrary to the REAL ID Act.

15   *See Singh*, 499 F.3d at 976;  *I.N.S. v. St. Cyr*, 533 U.S. 289, 298 (2001).

16        Moreover, unlike *Arce,* in which there was no collateral issue to review, here Gbotoe

17   seeks review of his stay motion, not direct review of his removal order.  As noted, our court of

18   appeals has held that the denial of a stay of a final removal order pending a motion to reopen

19   does *not* "qualify as a final order of removal," is *not* "inextricably linked" to a removal order,

20   and does *not* "attack the validity of the underlying removal order."  *Shaboyan*, 652 F.3d at 990.

21        This action presents circumstances akin to those in *Singh,* 499 F.3d at 977.  As in that

22   action, Gbotoe is seeking review of a decision that arose *after* a final removal decision, and a

23   grant of relief will lead to nothing more than "a day in court . . . which is consistent with

24   Congressional intent underlaying the REAL ID Act."  *Id.* at 979.  If Gbotoe's request for a stay

25   is denied, he will be removed from the United States before ever having the merits of his motion

26   to reopen determined by the BIA.

27        Respondents take issue with Gbotoe's assertion that he will be unable to contest his case

28   in our court of appeals following a merits decision by the BIA.  They explain that removed aliens

6

1  may continue to pursue their cases even after removal (Dkt. 9 at 5 (citing *Reyes-Torres v.*

2  *Holder*, 645 F.3d 1073, 1074-75 (9th Cir. 2011)).  While it is legally possible to maintain a claim

3  after his involuntary removal, Gbotoe observes that it is unlikely he would be able to

4  meaningfully participate in his case if he were returned to Liberia (Dkt. No. 12 at 14).  He notes

5  that the Liberian government immediately detains deportees from the United States upon arrival.

6  Detainees are held in prisons that are notoriously dangerous, and often subjected to violence,

7  lack of food or water and lack of medical care (*ibid*. citing Dkt. No. 4-1 at 60, 76-79 (Appendix

8  to Motion to Reopen: Documents Evidencing Danger Faced by Persons Viewed as Deportees in

9  Liberia)).  Even if Gbotoe were not immediately imprisoned, he argues that he would be unable

10  to assist in his prosecution because he would be returning to a country where he has not lived

11  since he was eight, that is openly hostile to people of his ethnic group and religion, and without

12  any family or other support (Dkt. No. 12 at 13–14).  Given the significant barriers removal will

13  create to Gbotoe's ability to pursue litigation, his removal now, before he has had an opportunity

14  to present his claims, will prejudice his day in court.  That result would be inconsistent with the

15  REAL ID Act, through which Congress provided removable aliens an opportunity to bring their

16  claims before an Article III court.  Accordingly, this order finds that the district court has habeas

17  jurisdiction to review the BIA's denial of a Gbotoe's stay.

18  **2.  PROVISIONAL RELIEF.**

19  A party seeking provisional relief must establish that "he is likely to succeed on the

20  merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

21  balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v.*

22  *Nat. Res. Defense Council*, 555 U.S. 7, 20 (2008).  In our circuit, this four-part test is also

23  satisfied if "serious questions going to the merits [are] raised and the balance of hardships tips

24  sharply in the plaintiff's favor" so long as there is also a likelihood of irreparable harm and an

25  injunction would be in the public's interest. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d

26  1127, 1135 (9th Cir. 2011) (citations and quotations omitted).

27  This order first analyzes Gbotoe's showing on irreparable harm, balance of the equities,

28  and public interest, and turns to likelihood of success on the merits last.

7

**A.    Irreparable Harm.**

If Gbotoe's motion is denied, he will likely suffer irreparable harm. This harm would take the form of his removal and prejudice to his ability to pursue his legal claim (Dkt. No. 4-2 at 3–5). Indeed, his entire petition is predicated on his fear of return to Liberia. Should he be returned to Liberia *before* his claim is heard, he risks physical harm, imprisonment, and even death (*see* Dkt. No. 4-1 at 60, 76-79).

**B.    Balance of Equities.**

The balance of equities likewise favor Gbotoe. Provisional relief will not impose any meaningful burden on respondents, nor do respondents identify any hardship they will suffer if a stay is granted (other than the custodial expense of detaining Gbotoe). Provisional relief will simply maintain the status quo, while Gbotoe remains in custody. If Gbotoe is removed, by contrast, he will likely suffer physical harm as well as the substantial risk of having to abandon his case. Therefore, this factor tips sharply in Gbotoe's favor.

**C.    Public Interest.**

The public has an interest in the orderly application of laws in accord with Congress's intent. As stated, the REAL ID Act contemplates eventual review by an Article III judge. Denying Gbotoe's petition at this stage would likely strip him of the right to have an Article III court review his motion to reopen. Moreover, "there is a public interest in preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm." *Nken v. Holder*, 556 U.S. 418, 436 (2009). While the public also has an interest in the prompt execution of removal orders, that interest is outweighed here. *See Ibid.* The public-interest factor weighs in Gbotoe's favor.

**D.    Likelihood Of Success Or Serious Questions Going To The Merits.**

Gbotoe next argues that he is likely to prevail on, or at least has raised serious questions going to the merits of his claims that the BIA's decision denying him a stay pending a ruling on his motion to reopen violates due process, and that the BIA's decision was arbitrary and contrary to the law because the BIA failed to apply the correct legal standard in deciding his motion for a stay (Dkt. Nos. 2 at 3; 12 at 12–13).

8

1    In the Ninth Circuit, the four factors courts evaluate in determining whether a stay should

2  issue are identical to those evaluated when considering whether to grant provisional relief.

3  *Leiva-Perez v. Holder*, 640 F.3d 962, 968 (9th Cir. 2011). These are set fort above and need not

4  be repeated here.

5    The BIA's decision stated in full (Dkt. No. 4-2 at 89):

6    Counsel for the respondent has applied for a stay of removal pending
     consideration by the Board of Immigration Appeals of an appeal of the
7    Immigration Judge's denial of a motion to reopen. After consideration of all
     information, there is little likelihood that the appeal will be sustained.
8    Accordingly, the request for a stay of removal is denied.

9
     The BIA's finding that there was "little likelihood that the appeal will be sustained,"
10
   however, does not rule out the possibility that Gbotoe raised serious questions going to the
11
   merits of his claim.[1]
12
     Here, it is uncontested that Gbotoe has a statutory right to contest his removal on the
13
   basis of changed country conditions through a motion to reopen his asylum case. 8 U.S.C.
14
   1229a. Furthermore, it is uncontested that Gbotoe sought exactly this relief in his motion to
15
   reopen brought before the immigration judge. Nevertheless, Gbotoe claims that he has been
16
   denied the opportunity to have his motion to reopen, as supplemented, heard. A review of the
17
   record demonstrates that this contention has merit.
18
     To repeat, Gbotoe's attorney only learned of his imminent removal the day before filing
19
   his original June 2017 motion to reopen. Because of the short time he had to draft the motion
20
   and marshal evidence, Gbotoe's counsel accompanied the motion with a parallel motion for
21
   leave to amend the June 2017 motion to include more, supplemental evidence. Leave to amend
22
   was granted (Dkt. Nos. 4 ¶ 5; 4-1 at 2). Gbotoe's attorney thereafter filed an amended motion
23
   with substantial, additional evidence related to increased danger in Liberia due to changed
24
   country conditions (Dkt. Nos. 4 ¶ 5; 4-1 75–83).
25
     It is this substantial, additional evidence that lies at the crux of the dispute, which seems
26
   never to have been reviewed by the immigration judge.
27

28
     [1] Because the BIA failed to consider the alternative standard requiring only "serious questions going to
   the merits," there is no occasion now to apply a deferential standard of review.

9

1    As stated, three days after Attorney Laner filed Gbotoe's amended motion to reopen

2    containing the supplemental evidence, the immigration judge issued an order denying Gbotoe's

3    motion to reopen. Based on the order's content, however, the immigration judge appears only to

4    have addressed the unsupplemented record submitted in connection with Gbotoe's June 2017

5    motion to reopen (Dkt. No. 4-2 at 13–17). Significantly, the immigration judge stated that

6    Gbotoe "ha[d] not alleged that there is new evidence which was unavailable at the prior

7    proceedings" and further found that Gbotoe had submitted "supporting documentation which

8    establishes that nothing has changed in Liberia" (*id.* at 15–16). Based on his analysis, it appears

9    that the immigration judge did not consider any of the supplemental evidence submitted with

10    Gbotoe's amended motion to reopen.

11    Later events confirm this. Even more significantly, little more than a month after

12    rendering his decision, the immigration judge issued a *second* order denying Gbotoe's motion to

13    reopen (Dkt. No. 4-2 at 19). That order referred to Gbotoe's "2nd Motion to Reopen" and

14    denied it on the grounds that the immigration judge did not have jurisdiction to hear a second

15    motion (*id.* at 21). But there was no second motion. There was only an amended motion that

16    had a follow-on supplement as had been approved by the immigration judge.

17    It appears from the record that the immigration judge construed the materials submitted

18    in support of the changed country conditions as a second motion to reopen, and on that basis

19    declined to review them (Dkt. No. 15 at 2–3, n. 1; *see* Dkt. No. 4-2 at 21). This unfortunate turn

20    of events means that the majority of the evidence Gbotoe submitted has never been reviewed.

21    Gbotoe raised this snafu in his appeal to the BIA, explaining that he had submitted

22    substantial evidence of changed conditions in Liberia, which made it likely that Gbotoe would be

23    imprisoned, persecuted and tortured were he to return, and that the immigration judge had not

24    considered that evidence (Dkt. No. 4-2 at 70–78). Nothing in the BIA's decision on Gbotoe's

25    motion to stay — set forth in full above — shows that the BIA considered this argument, which

26    undoubtedly raises serious questions as to whether the immigration judge's decision was an

27    innocent error.

28    This order finds that Gbotoe has raised serious questions going to the merits of his appeal

to the BIA (even if he has not shown a probability of success on the merits).[2]

## CONCLUSION

Gbotoe has raised serious questions going to the merits of his claim, the balance of hardships tops strongly in favor of Gbotoe, and he has made the requisite showing on each of the other *Winter* elements.  Accordingly, his motion for a preliminary injunction is **GRANTED**, as follows.  Respondents are **HEREBY ENJOINED** from removing Gbotoe from the United States pending a final determination on the merits of Gbotoe's appeal of his motion to reopen currently pending before the BIA.  The injunction will expire **SEVEN CALENDAR DAYS** after the BIA issues its decision, after which time this Court will no longer retain subject-matter jurisdiction over Gbotoe's claim.  Any further relief, provisional or otherwise, must be presented to our court of appeals.

**IT IS SO ORDERED.**

Dated:   December 6, 2017.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

---

[2]   Because the injunction approved by this order only requires maintenance of the status quo, it is unnecessary to apply the heightened standard of proof associated with a mandatory injunction.